Dear Mr. Gastesi:
You have asked substantially the following questions:
1. May Monroe County require its employees and elected officials to participate in its self-insured health insurance program, regardless of whether a premium is charged?
2. If the answer is yes, then must the County allow employees, elected officials, and retirees the option to participate in group insurance programs (offering coverage for dental, vision, and accidental death or dismemberment) if the individuals elect not to participate in the self-insurance program?
In sum:
1. Monroe County may not require its employees and elected officials to participate in its self-insured health insurance program.
2. There is no statutory requirement that Monroe County must allow employees, elected officials, and retirees to participate in optional group insurance programs, such as dental, vision, and accidental death or dismemberment plans, offered to county employees and elected officials when the individuals elect not to participate in the county's self-insured group program.
You state that Monroe County currently requires all employees and elected officials to participate in a self-insured health insurance plan which also has pharmacy benefits. Employees and elected officials are not charged a premium, with the county contributing $790.00 monthly per employee for participation in the plan. The county provides nominal life insurance and accidental death and dismemberment plans at no charge to its employees and elected officials. Retirees have the option of continuing in the plan at their own expense. All participants have the option to enroll spouses and dependents in the plan at an additional premium cost paid by the employee, elected official, or retiree. Funding for the program and pharmacy benefits is derived from ad valorem taxes and premiums collected for coverage of retirees, spouses, and dependents.
The county offers optional insurance plans for vision, dental, and accidental death and dismemberment, available at the expense of employees or elected officials. While the self-insurance plan is mandatory, employees and elected officials may change their participation in all other group insurance programs during an opt-in/opt-out period each year.
Question One
Section 112.08(2)(a), Florida Statutes, authorizes every local governmental unit to:
"[P]rovide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or all or any kinds of such insurance, for the officers and employees of the local governmental unit and for health, accident, hospitalization, and legal expense insurance for the dependents of such officers and employees upon a group insurance plan and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance. . . . Each local governmental unit may self-insure any plan for health, accident,and hospitalization coverage or enter into a risk managementconsortium to provide such coverage, subject to approval based on actuarial soundness by the Office of Insurance Regulation; and each shall contract with an insurance company or professional administrator qualified and approved by the office to administer such a plan." (e.s.)
The authority for local governmental units to provide group insurance to their employees originated in 1941.[1] Officers were added as eligible participants in 1972.[2] As originally enacted, the act stated that participation in such group insurance by any employee "shall be entirely voluntary at all times."[3] The act further required a written request from the public employee before the employer could deduct the costs of premiums from the employee's wages.[4] While the language in section 112.08, Florida Statutes, was substantially reworded in 1976, the only significant alteration was to provide local governing units authority to "self-insure any plan for health, accident and hospitalization coverage[.]"[5] The provisions in the act recognizing participation is voluntary and the requirement of written authorization from the officer or employee for deductions to be made from his or her wages for premiums present in the original act remain intact today and are contained in section 112.11, Florida Statutes, which states:
"The participation in such group insurance by any officer or employee shall be entirely voluntary at all times. Any officer or employee may, upon any payday, withdraw or retire from such group insurance plan, upon giving the employer written notice thereof and directing the discontinuance of deductions from wages in payment of such premiums." (e.s.)
The plain language of the statute relates to voluntary participation in "group insurance," not a particular plan that may be provided through an insurance company, a professional administrator, or self-insurance. The term "group insurance plan" is not defined for purposes of the act, but the intent of the Legislature in the enactment of the law is clearly stated in section 112.14, Florida Statutes:
"It is hereby declared to be the purpose and intent of this law to make available upon a voluntary participation basis to the several officers and employees aforesaid, the economics, protection and benefits of group insurance not available to each officer and employee as an individual. It is also the purpose and intent of this law to provide authority for the payment of premiums or charges for group insurance for county officers whose compensation is fixed by chapter 145 in addition to the compensation provided in chapter 145." (e.s.)
It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis.[6] While the authorized means for a local government to provide group insurance were expanded to include self-insurance or participation in a risk management consortium, [7] there is nothing in the language of the statute or the legislative history of section 112.08, Florida Statutes, to indicate a change in the Legislature's intent that employees and officers voluntarily participate in the group insurance offered by local governing units.
Accordingly, it is my opinion that Monroe County may not require its officers and employees to participate in its self-insured group health insurance plan.
Question Two
As noted above, section 112.08, Florida Statutes, authorizes local governmental units to provide all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or "all or any kinds of such insurance" for their officers and employees. The governmental unit may also provide and pay for health, accident, hospitalization, and legal expense insurance for the dependents of such officers and employees. In providing such insurance, each local governmental unit "may determine the portion of the cost, if any, of such fund, plan, or program to be paid by officers or employees of the local governmental unit and fix the amounts to be paid by each such officer or employee as will best serve the public interest."[8]
The discretionary authority for local governmental units to provide and pay for group insurance, however, does not appear to carry with it an obligation to provide group insurance, nor does it require the offering of additional types of insurance, such as optional insurance plans for vision, dental, and accidental death and dismemberment or require the county to allow participation by those who have opted out of the group insurance.[9] Section 112.0801, Florida Statutes, provides:
"Any state agency, county, municipality, special district, community college, or district school board which provides life, health, accident, hospitalization, or annuity insurance, or all of any kinds of such insurance, for its officers and employees and their dependents upon a group insurance plan or self-insurance plan shall allow all former personnel who retired before October 1, 1987, as well as those who retire on or after such date, and their eligible dependents, the option of continuing to participate in such group insurance plan or self-insurance plan. Retirees and their eligible dependents shall be offered the same health and hospitalization insurance coverage as is offered to active employees at a premium cost of no more than the premium cost applicable to active employees. For retired employees and their eligible dependents, the cost of continued participation may be paid by the employer or by the retired employees. . . ."
When a statute enumerates the things upon which it operates, it is ordinarily construed as excluding from its operation all things not expressly mentioned.[10] Thus, the Legislature in section 112.0801, Florida Statutes, has prescribed those instances in which a local governing unit is required to allow others than its officers and employees, in this case retirees, to participate in a group insurance plan offered by the unit. It is beyond the authority of this office to read additional requirements into the statute or to extend its application to other types of group insurance offered by a governmental unit.[11]
There is nothing in sections 112.08 or 112.0801, Florida Statutes, nor has any other statutory provision been brought to my attention, requiring the county to allow participation in its optional dental, vision, and accidental death or dismemberment group plans by anyone other than those who are designated by the county as eligible to do so. While, as discussed in Question One, participation in the group insurance provided by the county is voluntary, nothing in the applicable statutes mandates the types of insurance which must be offered.
Accordingly, it is my opinion that Monroe County is not required to allow employees, elected officials, and retirees to participate in optional group insurance programs, such as dental, vision, and accidental death or dismemberment plans, offered to county employees and elected officials, if the individuals elect not to participate in the county's self-insured group program.
Sincerely,
 Pam Bondi Attorney General
PB/tals
[1] See Ch. 20852, Laws of Fla. (1941), authorizing all governmental units in Florida to set up group insurance plans for employees.
[2] See Ch. 72-338, Laws of Fla. (1972).
[3] Section 4, Ch. 20852, Laws of Fla. (1941).
[4] Section 3, Ch. 20852, Laws of Fla. (1941).
[5] See s. 1, Ch. 76-208, Laws of Fla. (1976), substantially rewording section 112.08, Fla. Stat., to its present form allowing local governmental units to self-insure its group insurance plan.
[6] See State v. Rife, 789 So. 2d 288, 292 (Fla. 2001);McLaughlin v. State, 721 So. 2d 1170, 1172 (Fla. 1998).
[7] See House Commerce Committee, Tape 1 of 2, Side B, April 27, 1976, reflecting that the purpose of authorizing local governmental units to self-fund group insurance is to lower rates and allow local governmental units to receive the interest that accrues on the premiums paid into the fund, rather than the private insurance company; further reiterating that the bill is merely permissive, not mandatory.
[8] Section 112.08(3), Fla. Stat.
[9] See n. 7, supra.
[10] See Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976) (enumeration of specific items implies the exclusion of others not mentioned).
[11] See, e.g., Board of County Commissioners of MonroeCounty v. Department of Community Affairs,560 So. 2d 240 (Fla. 3d DCA 1990) (in construing a statute, courts cannot attribute to the legislature an intent beyond that expressed).